**Wytheville.**

FIRST NATIONAL BANK OF RICHMOND AND OTHERS V. HOLLAND AND OTHERS.

JUNE 20, 1901.

Absent, Keith, P., and Whittle, J.

1. EVIDENCE—*Husband and Wife—Gift by Husband—Subsequent Declarations.*—Where a completed gift of bank stock from a husband to his wife has been clearly established, her title thereto will not be affected by the mention of the stock in a subsequent will or deed of trust of the husband, to which she was not privy, and under which she does not claim, nor by the fact that the stock continued to stand in his name, and that he collected the dividends thereon.

2. EVIDENCE—*Husband and Wife—Gift by Solvent Husband—Subsequent Declarations—Fraud—Acts 1897-'8, p. 753.*—The declarations of a husband who is free from debt at the time the declarations are made are admissible to prove a gift in favor of his wife. The act of 1897-'8, page 753, relating to the testimony of husband and wife for or against each other in proceedings by creditors to avoid gifts from one to the other, has no application to such declarations.

3. GIFTS—*Unendorsed Certificate of Stock—Equitable Assignments—Delivery.*—The delivery of a certificate of stock, unendorsed, by the donor to the donee, with intent to transfer title by way of a gift, is effectual as an equitable assignment, although no legal title passes for want of an endorsement and transfer on the books of the company. A delivery which vests an equitable title only in the donee is all that is required to constitute a valid gift.

4. GIFTS—*"Goods and Chattels"—Code, Section 2414—Chose in Action.*—The words "goods or chattels" used in section 2414 of the Code, relating to gifts, do not apply to choses in action, but only to visible and tangible property. A chose in action is the money, damages or thing owing; the bond or note, etc., is but the evidence of it.

5. CONSTRUCTION OF STATUTES—*Code—One Act.*—The Code is but one act,

and is to be construed as a whole. The construction placed upon language used in one section may be considered in determining the meaning of similar or the same language used in other sections.

Appeal from a decree of the Circuit Court of the city of Danville, pronounced May 25, 1900, in two chancery causes heard together, in one of which the appellants were the complainants, and the appellees were the defendants.

<em>Affirmed.</em>

The opinion states the case.

*E. E. Bouldin, Peatross & Harris, Blackford, Horsley & Blackford,* and *Williams & Williams,* for the appellants.

*Berkeley & Harrison, J. Sidney Smith,* and *Christian & Christian,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This controversy is between the creditors of John W. Holland, deceased, on the one hand, and Ola F. Holland, the widow of John W. Holland, on the other; and involves the title to one hundred and twenty shares of the capital stock of the Merchants Bank of Danville. The appellee, Ola F. Holland, claims the stock by virtue of a parol gift alleged to have been made to her by her husband prior to the creation of the debts, to the payment of which it is now sought to subject the stock. The claim of the appellee is resisted by the creditors, upon the ground that no valid gift has been established, and, in support of this general proposition, several contentions are made which will be considered in proper order.

It appears that in 1889 John W. Holland, then advanced in life, married the appellee, a comparatively young woman; that he was the owner of one hundred and twenty shares of the capital stock of the Merchants Bank of Danville, evidenced by a single certificate, " No. 45," and that, as early as January, 1892, he

had delivered this certificate, without endorsement, to his wife as a gift to her of the 120 shares represented by it. It further appears that, at the time of this transaction, John W. Holland was a wealthy man, the value of the stock in question being but a small part of his estate, and that he was free from debt either as principal or as surety for other persons. It further appears that on the 30th of January, 1892, the appellee bought and had delivered at her house an iron safe, with her name inscribed thereon, which she kept in her own room, and in which she placed, on that day, for safe keeping, the certificate of stock " No. 45"; that no one but herself had the combination to this safe, or ever thereafter had in possession the stock scrip in question, or exercised any control over it. Some time in 1896 the appellee, having been advised that it was best to have the stock transferred to her on the books of the bank, produced the certificate for the counsel of her husband to write the assignment to her. This was done, and the assignment duly executed by the husband. It further appears that on January 2, 1897, the original scrip, " No. 45," was delivered to the bank, and scrip No. 72, in the name of the appellee, issued in its stead, and her name entered on the books of the bank as a stockholder. Up to January, 1897, the stock had stood in the name of John W. Holland, and he had retained his position as one of the directors of the bank, and all dividends declared on the stock had been passed to his credit with the bank, or a check given him therefor.

It further appears that John W. Holland made his will on February 8, 1892, in which the following disposition was made of the stock in question: " I also give, devise, and bequeath unto my said wife one hundred and twenty shares of the stock of the Merchants Bank of Danville, Va., now held and owned by me," providing, further on, that the stock should be in no way subject to the control of his personal representatives, except so far as it might be their duty to transfer the same to his wife. This will was prepared by Judge Berryman Green, a learned lawyer, who

had been for many years the intimate friend and counsel of the testator. After testifying in clear and positive terms that, at the time of the execution of this will, the stock certificate in question was in the possession of the appellee, and that John W. Holland then told him he had already given the stock to his wife, Judge Green says, in explanation of the stock being referred to in the will, that Mr. Holland wished to mention specifically all the property he had given to his wife, and that, being entirely solvent and free of debt, he did not desire to make the gift public because it would involve the surrender of his position as one of the directors in the bank. It further appears that on January 1, 1897, John W. Holland, having become heavily involved as endorser for a brother, executed a deed of trust, for the benefit of his creditors, to Judge Berryman Green. In that deed the stock in question is thus referred to: "Whatsoever interest, if any, said party of the first part may have in one hundred and twenty shares of the capital stock of the Merchants Bank of Danville aforesaid; this stock having been given and transferred to his wife, Ola F. Holland, and possession thereof delivered to her long prior to the execution of this deed, the party of the first part makes no claim thereto, and believes that he has no interest therein, but with a view of protecting her as far as possible, in the event of any claim being asserted thereto by creditors, said party of the first part hereby assigns, transfers, and sets over all interest, legal and equitable, whatsoever, that may be in him in said stock and directs that the same shall not be sold or disposed of unless the other property herein conveyed shall be insufficient to meet and pay off the liabilities secured hereunder."

In the bill filed by Judge Green, trustee, asking the court's aid in the administration of his trust, after setting forth the foregoing clause of the deed, he says: "In spite of this plain and explicit disclaimer of the said John W. Holland of any and all interest in the stock as above set forth, some of the creditors secured in said deed have, through their counsel, demanded of

your orator, as trustee, that he shall take immediate charge of the said stock and apply the same to the debts secured," etc. The foregoing facts are sufficient to make clear the several questions presented by appellants in contesting the validity of appellee's claim.

It is not necessary to pass upon the competency of Mrs. Holland as a witness in her own behalf, for, independently of her testimony, the fact of the gift of the stock, as early as January, 1892, and the unqualified possession and exclusive control of the original certificate by Mrs. Holland until the same was surrendered and the new certificate issued in her name, is abundantly established by clear and conclusive evidence.

In the light of the convincing proof of the previous gift of the stock to the wife, the subsequent conduct of Holland in embracing the same property in his will and deed of trust is confirmatory, rather than derogatory, of her prior title. The language of the will, especially in view of Judge Green's explanation of the motive for mentioning the stock, and his testimony that, prior to drafting the will, the testator had advised him of the previous gift of this stock to his wife, makes it clear, we think, that it was not intended thereby to affect the previous gift, but to facilitate, in case of the testator's death, the due legal transfer of the stock on the books of the bank. The language of the deed of trust, which was made five years after the original gift, is a distinct and emphatic recognition of the gift as made long prior to the execution of the deed, and a disclaimer of all right to, or interest in, the stock. The language used in conveying the stock can bear no other construction than that, in the event of a successful adverse claim by creditors, the grantor desired to provide how the trustee should handle the stock to secure the best results for his wife. If, however, these instruments, made and executed by John W. Holland subsequent to the gift of the stock, were susceptible of a different construction, they were his acts, and not the acts of his wife. She was not

privy to either the will or the deed, and is not claiming under either, but holds her title superior to both, and her rights cannot be affected thereby. Nor could the payment of dividends to John W. Holland after the stock was given to his wife affect her rights. The stock continued to stand in his name until January, 1897, and it was therefore natural that the dividends should be passed to his credit on the books of the bank. This may have been done with the wife's knowledge and without objection on her part, but, be that as it may, the circumstance is overcome by the clear proof of the gift.

It is contended by the appellants that all statements made by the witnesses, Berryman Green, W. W. Holland and Mary S. Fowlkes, of admissions made by John W. Holland that he had given the stock to his wife are inadmissible because, if he were now living, he would be incompetent to testify to the same fact. It must be borne in mind that the statements of John W. Holland, sought to be excluded, were made by him when he was entirely free from debt. The question is, therefore, whether declarations of a husband, who is free from debt at the time the declarations are made, are admissible to prove a gift in favor of his wife. Upon well settled principles, we answer this question in the affirmative. Not only was the gift in question made when the donor was free from debt, but his declarations touching the gift were practically contemporaneous therewith, and made when, as shown by the record, from the nature of things, he could have had no suspicion of the financial difficulties in which he was subsequently involved by the speculations of his brother. The case of *Yancey* v. *Massey*, 90 Va. 626, relied on by appellants does not conflict with the conclusion that the declarations of John W. Holland were admissible. In that case Massey and his wife were living, and both were parties to the suit. The assignment there under consideration was made after the indebtedness was created, and the object of introducing the admissions of Massey was to show that he had no interest in the subject

of the assignment made by him, but that it belonged to his wife. The court held that Massey could not have been a competent witness in his wife's favor, and that his declarations made under the circumstances were equally inadmissible. That case has no application to the one before us, where the declarations relied on were made at a time when the donor was free from debt, and therefore against interest, and without the slightest temptation to make such declarations falsely. Nor is the contention sound that such admissions are inhibited by the Act of 1897-'8, page 753, declaring that *"neither the husband nor wife shall be competent to testify for or against each other in any proceeding by a creditor to avoid or impeach any conveyance, gift or sale from the one to the other on the ground of fraud or want of consideration,"* etc. It is clear that the policy of this statute was to prevent the husband or wife from testifying in favor of the other in support of a gift made when the donor was indebted, for the obvious reason that declarations or testimony given, after the donor was in debt, to sustain a prior transfer are suspicious and dangerous. But neither the letter nor the spirit of the statute forbids declarations made by the husband before he was in debt from being introduced in proof of the gift. Such admissions are free from all suspicion, and are governed by the general principles of the law with respect to declarations against interest.

To hold inadmissible the declarations of the husband made under the circumstances of the case in judgment, would be, as said by the learned judge of the Circuit Court, to defeat a class of benefactions which, under certain conditions, are not only lawful, but are in a high degree commendable.

It is further contended by appellant that the gift of the stock by John W. Holland to his wife was not complete, because the certificate delivered to her was not endorsed, the power of attorney to transfer the shares not being signed by the donor. This position is not tenable. It is well settled by the modern authorities that choses in action not negotiable, and negotiable paper

not endorsed, may be the subject of a gift, and that a delivery which vests in the donee the equitable title is sufficient without a complete transfer of the legal title. The delivery therefore of a crtificate of stock, unendorsed, by the donor to the donee, with intent to transfer title by way of gift, is effectual as an equitable assignment, although no legal title passes for want of an endorsement and transfer on the books of the bank. 3 Wait's Actions and Defences, pp. 491, 506; Thompson on Private Corporations, sec. 2930; Graves' Title to Personal Property, p. 21; *Leyson* v. *Davis*, 17 Mont. 220 (42 Pac. Rep. 775); *Basket* v. *Hassel*, 107 U. S. 602; *Thomas* v. *Lewis*, 89 Va. 1. In the case last cited the gift under consideration was accomplished by the delivery to Bettie Lewis of the keys to a safety deposit box which was in a vault in the Planters Bank. An inspection of the record shows that among the contents of the safety deposit box were certain stocks, some of which had been bought by Thomas. and not endorsed by him and others stood in his name; and none of them had been endorsed or transferred on the back to the donee, Bettie Lewis. The court held that all the stocks in the box had been sufficiently delivered by the delivery of the keys to the box containing the certificates. It would seem that, if the delivery of the keys to a box containing unendorsed certificates of stock, was sufficient to constitute a transfer of the equitable title to the stock represented by those certificates, *a fortiori* the delivery of the certificates themselves would have been deemed a sufficient delivery to vest title in the donee.

In *Basket* v. *Hassel, supra*, it was regarded as unquestionable that a delivery of the certificate of deposit involved therein to the donees, without an endorsement, would have transferred the whole title and interest of the donor in the funds.

We hold, therefore, that it was not indispensable to the validity of the transfer of the stock in question that there should have been any endorsement on the certificate, or transfer on the books of the bank; that the delivery of the cer-

tificate, without endorsement, by John W. Holland to his wife with intent to give her the stock, vested in Mrs. Holland the complete equitable title, and divested her husband of all present control and dominion over the same. The only effect of the subsequent endorsement of the certificate and transfer of the stock on the books of the bank was to vest in the donee the legal title to that in which she already had the beneficial interest. This she could have compelled if it had not been done voluntarily.

The remaining question is whether section 2414 of the Code applies to the gift in question and renders it invalid, because the donor and donee were husband and wife residing together at the time of the gift. That section is in these words:

"No gift of any goods or chattels shall be valid, unless by deed or will, or unless actual possession shall have come to and remained with the donee, or some person claiming under him. If the donor and donee reside together at the time of the gift, possession at the place of their residence shall not be a sufficient possession within the meaning of this section."

The answer to this question depends upon whether the words *goods or chattels* in the section quoted were intended to embrace *choses in action.* We have given this subject the earnest consideration it deserves, and have found the conclusion irresistible that the terms *"goods or chattels"* employed in section 2414 were not intended to include *"choses in action,"* but were only designed to cover tangible and visible property.

A chose in action is defined by Kent as a personal right not reduced into possession, but recoverable by a suit at law. Money due on bond, note, or other contract, damages due for breach of contract, for the detention of chattels or for torts, are included under this general head or title of things in action. 2 Kent's Com. (11th ed.), marg., p. 351. Any right which has not been reduced to possession, is a chose in action. 1 Parsons on Contracts, ch. 14, sec. 1. A chose in action is a mere right of action

to a personal chattel not in actual possession. *Purdue* v. *Jackson*, cited by Judge Allen in *Yerby* v. *Lynch*, 3 Gratt. 494.

Bouvier, in his Institutes, Vol. 1, p. 191, says that a distinction must be made between the security or the evidence of the debt, and the thing due. A deed, a bill of exchange, or promissory note, may be in the possession of the owner, but the money or damages due on them are no less choses in action. This distinction is to be kept in view. The chose in action is the money, damages, or thing owing; the bond or note, etc., is but the evidence of it. There can, in the nature of things, be no present possession of a thing which lies merely in action.

Now, the "goods and chattels," the subject of the gift under section 2414, must, by the terms of the section, be capable of actual possession; *"shall have come to and remained with the donee, or some person claiming under him."* Such possession can only be predicated of some visible, tangible, movable thing, and hence the subsequent language serves to explain and limit the meaning of the general terms which go before, and excludes the idea that they were intended to include mere *"choses in action,"* which, as such, are incapable of actual possession.

The Code is one act, prepared and adopted as such, and therefore in construing section 2414 we are not confined to the language of that section, but can look to other sections of the Code where the same terms are employed. It would extend this opinion to a most unreasonable length to attempt a reference to each of the sections in which the words *"goods or chattels,"* or *"goods and chattels,"* are used. It must suffice to say that whenever it is intended to describe the whole interest or estate, the defined terms *"real estate"* and *"personal estate"* are generally employed; and whenever less than the whole is intended, different language is used. An examination of the Code will show that in no instance are the words *"goods and chattels"* or *"goods or chattels"* used as the equivalent of *"personal estate"* as defined; but always in the limited sense of visible, tangible, movable

personal chattels—such as are objects of the senses—deliverable in specie. For example, section 627 provides that, when the officer cannot find sufficient *"goods or chattels"* to distrain for taxes or levies, he may proceed to collect the same by garnishment; that is, by subjecting the choses in action of the delinquent tax-payer.

Sections 2414, 2461, 2462, 2465 and 2569, all relate to gifts, loans, sales, or partition of the same kind of property, described by the same terms—namely, *"goods or chattels"* or *"goods and chattels."* They are closely connected in subject-mattter and in the language employed, and it can hardly be doubted that whatever was meant by the words *"goods or chattels"* or *"goods and chattels"* in either one of these sections must have been intended of the same words in each of the other sections. This court has decided that the words *"goods and chattels"* in section 2465 mean visible, tangible, personal property only; that they do not include *choses in action. Kirkland, Chase & Co.* v. *Brune,* 31 Gratt. 126. This decision has since been repeatedly followed.

Sections 2414 and 2465 are so closely related as to the subject-matter of gifts that they may be said to be in *pari materia,* and should be construed together. Both relate to goods and chattels; section 2414 wholly, and section 2465 in part. There can be no good reason why the words *"goods or chattels"* or *"goods and chattels"* should have a meaning in section 2465 that they do not have in section 2414. As to the rule of construing statutes in *pari materia* and the application of the rule in the construction of the Code, see *Dillard* v. *Thornton,* 29 Gratt., on page 396; *Easly* v. *Barksdale,* 75 Va., on page 281.

From our view of the several sections of the Code in which the words *"goods or chattels"* or *"goods and chattels"* are found it seems clear that these terms, in every instance, are limited in meaning to corporeal personal property. If it was intended by their use in section 2414, or any other section, to comprehend all property not real, incorporeal as well as corporeal personal

property, it is strange that the Legislature did not make its meaning plain by the use of the terms *"personal estate."* Those terms are defined by the Code, and, as defined, include every possible property interest except real estate. Throughout the Code the terms *"personal estate"* are employed whenever personal property in its most extensive sense is intended.

The history of this legislation sheds light upon the question under consideration, and fortifies, we think, the view that *choses in action* were not intended to be embraced by the terms *"goods or chattels"* used in section 2414. The first act was passed in 1757, and from that time until the revisal of the Code in 1849, nearly one hundred years, the law was confined to gifts of slaves. At the revisal of 1849 two important changes were made. After the word "slave" were inserted "or of any goods or chattels," and a new clause was added at the end of the section in these words: " If the donor and donee reside together at the time of the gift, possession at the place of their residence shall not be a sufficient possession within the meaning of this section." Code 1849, ch. 96, sec. 1. With the words "of a slave or" stricken out, the law, as found in the Code of 1849, has been carried into section 2414 of the present Code. Slaves were chattels. Though not specifically named, they were always considered as embraced in the terms *goods or chattels,* and under the rule *ejusdem generis,* which is applicable in this case, the *goods or chattels* mentioned in section 2414 must be regarded and treated as of the same class or kind of chattels to which a slave belonged— that is, visible, tangible, movable personal property. It was to this kind of property—slaves—the language, *"actual possession coming to and remaining with the donee or some person claiming under him,"* was first applied in 1787. The same language remains to-day, and though the word "slave" has been stricken out since the words *goods and chattels* were inserted, that circumstance does not render the rule less applicable. Sedgwick on Stat. and Const. Laws (1st ed.), 250.

Counsel for the appellee have furnished us with the very learned and able brief of the late Judge E. C. Burks in the case of *Thomas* v. *Lewis, supra,* as their argument touching the proper construction of section 2414. That valuable paper has been freely used and quoted as the best means of expressing in a clear and satisfactory manner the court's view of the question under consideration.

Upon the whole case, we are of opinion that there is no error in the decree appealed from, and it is affirmed.

*Affirmed.*