## BURGER V. STATE FEMALE NORMAL SCHOOL.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### March 13, 1913.

1. EMINENT DOMAIN—*State Institutions—What May be Condemned—Dwelling Houses—Code (1904), Chapter 46-B.*—The State Female Normal School at Farmville is a State institution, and under the express terms of section 1105-f, clause 25 of chapter 46-b of the Code (1904), specific power is conferred upon it to condemn buildings, which include dwelling houses, for its purposes. The power thus expressly conferred is not limited by clause 3 of said section, which applies only to ordinary corporations chartered by the State, and not to those mentioned in clause 25, which are denominated State institutions.

2. EMINENT DOMAIN—*State Institutions—Procedure—Code (1904), Chapter 46-B, Section 1105-f, Clause 25.*—The limitation in clause 25 of section 1105-f, chapter 46-b, of the Code (1904), conferring the power of condemnation upon certain State institutions, declaring that "the proceedings in all such cases shall be according to the provisions of this act so far as they can be applied to the same" has reference to the mode of *procedure* only, and not to what may be condemned.

3. EMINENT DOMAIN—*Damages—Market Value—Necessities of Condemnor.*—In ascertaining the value of property proposed to be taken for a public use, its availability for the use of the condemnor is one of the elements proper to be considered by the commissioners along with all the other uses to which it is adapted, but the object is not to ascertain the value to the condemnor for its purposes, but to ascertain the fair market value of the property, so that just compensation may be made and a full and perfect equivalent given for the property taken, and it is not error to refuse to instruct the commissioners to consider the value of the property to the condemnor for its purposes as such an instruction unduly directs attention to the necessities of the condemnor.

Error to a judgment of the Circuit Court of Prince Edward county in a condemnation proceeding. Judgment for the petitioner. One of the defendants assigns error.

*Affirmed.*

The opinion states the case.

*J. T. Coleman,* for the plaintiff in error.

*A. D. Watkins* and *R. E. Byrd,* for the defendant in error.

Keith, P., delivered the opinion of the court.

This is a proceeding upon the part of the State Female Normal School, of Farmville, Va., an institution chartered under the laws of this State, to condemn certain property situated in Farmville, Prince Edward county, Va. The mode of procedure prescribed by the statute seems to have been pursued. Some of the parties, however, were served with notice in person, others were proceeded against by order of publication. The court appointed commissioners, who went upon the land and reported that in their judgment $2,300 would be a just compensation for the land taken, and that no other person would be damaged.

Mary E. Burger, one of the defendants, excepted to the report of the commissioners, but the court overruled the exception and confirmed the report, and ordered that when the sum ascertained by the commissioners to be the value of the property proposed to be taken should be paid into court, the title of the property should stand vested in the State Female Normal School according to law. To that judgment a writ of error was awarded by this court.

The petition assigns two grounds of error: First, the action of the court in overruling petitioner's motion to dismiss the petition, upon the ground that the property sought to be taken, being occupied by a dwelling house, is not liable to be condemned; and second, the action of the court in refusing to give an instruction offered by the petitioner.

The statute law applicable to the case is contained in chapter 46-B of Pollard's Code, section 1105-f. So much of clause 3 of that section as need be considered in this case is as follows: "Any company chartered by this State, which is authorized by its charter or by the laws of this State to condemn lands, or any interest or estate therein, or materials, or other property, for its uses, may, by its officers, agents, or servants, enter upon any lands or waters for the purpose of examining the same and surveying and laying out such as may seem fit to an officer or agent authorized by it: provided, that no injury be done the owner or possessor of the land. But no company shall * * * under any provision of this act, invade the dwelling house of any person in a city or town, or any space within sixty feet thereof, without the consent of the owner, except in the case of a railroad company when it is decided by the commissioners (appointed to ascertain the value of the land or other property, or the interest or estate therein, to be taken) that it would otherwise be impracticable, without unreasonable expense, to construct such railroad; * * * * "

The succeeding clauses of that section, down to clause 24, prescribe the mode of procedure which shall be followed in the condemnation of land. Clause 24 provides that the preceding sections are not to apply to certain institutions of learning, hospitals, etc., or land owned by the State, or cemeteries. Clause 25 gives the right of condemnation to school districts and certain State institutions, and provides that "If the court, or the board of supervisors, of any county, the council of any city or town, the trustees of any school district, the institution for the deaf and blind, any of the State hospitals, the University of Virginia, the Virginia Military Institute, or any other institution of this State, cannot, because of the incapacity of the owner, or inability to agree upon a price or terms,

or because the owner cannot, with reasonable diligence, be found in this State, or is unknown, agree on terms of purchase with those entitled to any land, buildings, structures, sand, earth, gravel, water, or other material necessary to be taken and used for the purposes of such county, city or town, or school district, or for the purposes of the institution for the deaf and blind, or of any such State hospital, or of the University of Virginia, or of the Virginia Military Institute, or of any other State institution, it may acquire the same by condemnation under the provisions of this act, and the proceedings in all such cases shall be according to the provisions of this act so far as they can be applied to the same."

The contention of plaintiff in error is that the power of condemnation conferred by this clause is to be exercised in subordination to clause 3, above quoted; that the property sought to be condemned in this proceeding is a dwelling house in the town of Farmville, and that it cannot be invaded, or any space within sixty feet thereof taken, without the consent of the owner, except in the case of a railroad company.

We cannot give our assent to this construction of the statute. Looking to the whole of section 1105-f of chapter 46-b of Code, we think it plain that the phrase, "Any company chartered by this State, which is authorized by its charter or by the laws of this State to condemn lands," has reference only to ordinary corporations chartered by the State, and has no application to those corporations which are denominated State institutions, which are part of the State government and were created for the purpose of performing governmental functions. Had the legislature deemed all chartered companies, whether organized for private purposes and controlled by private individuals, as standing upon the same footing with State institutions, as hospitals, asylums, colleges and universities, it would

be wholly unnecessary to encumber the Code with clauses 24 and 25. Section 25 plainly confers upon the institutions therein referred to, in language which certainly comprehends the State Female Normal School, power to condemn "any land, buildings, structures, sand, earth, gravel, water, or other material necessary to be taken and used" for its purposes.

The word "building" is a most comprehensive one. In volume 1, Words and Phrases, it is said: "A building is defined to be a structure in the nature of a house built where it is to stand; as commonly understood, a house for business, residence, or public use, or for shelter of animals or storage of goods, and very generally, though not always, the idea of a habitation for the permanent use of man, or an erection connected with his permanent use, is implied in the word 'building.' In its broadest sense it can mean only an erection intended for the use or occupation as a habitation or for some purpose of trade, manufacture, ornament or use."

Clause 25, therefore, confers upon the Normal School, in express terms, the specific power to condemn buildings, which includes dwelling houses, for its purposes.

But it is contended that the whole of this clause is qualified and limited by its closing sentence, which says that the property needed may be acquired by the institutions embraced within the clause, "by condemnation under the provisions of this act, and the proceedings in all such cases shall be according to the provisions of this act so far as they can be applied to the same."

It is plain that the concluding sentence thus quoted has reference to the mode prescribed by the entire chapter for giving effect to the right which it confers. It cannot be that the legislature, in the same clause which confers an express power to condemn buildings, a term which includes dwelling houses, would prohibit the very act which it had

authorized. The limitation refers plainly to the procedure by which the rights are to be enforced; and *procedure* is defined to be the steps taken in an action or other legal proceeding; and *proceeding* is defined by Blackstone to be the course of procedure in the prosecution of an action at law. See Webster.

Again, clause 3 in the statute refers to corporations generally, and in addition with respect to dwelling houses is in general terms; whereas clause 25 deals specifically with a class of corporations which embraces the defendant in error, and in unequivocal terms confers the power to condemn buildings. If clause 25 stood alone, the existence of the power to condemn buildings, including a dwelling house, could not be doubted or denied, and such being the case, had the legislature intended that the general power conferred by clause 25 should be limited by clause 3, it could have accomplished the result by excepting dwelling houses in clause 25 in express terms, as was done in clause 3; or, as we have already said, if it had intended that all corporations should stand upon the same footing, the result would have been accomplished by not enacting clause 25, which would in that case have been wholly unnecessary, and certainly we cannot impute to the legislature the purpose to limit and qualify the grant of an express power of a substantive right by the use of terms applicable alone to the mode of procedure by which that right was to be enforced.

We cannot think that the first assignment of error is well taken.

The court was asked to instruct the commissioners as follows: "The said commissioners are hereby instructed that in appraising the said property they are not to confine themselves to the value of the same to the owners for the uses to which it is at present put or applied by them; but the said commissioners are to consider as an element of

compensation the special adaptability. of the property to the particular use for which it is to be taken; its capability of being made available to the necessities of the Normal School, and the value to that school for its purposes." The court refused to give that instruction, and the plaintiff in error excepted.

In *Richmond, &c., R. Co.* v. *Chamblin,* 100 Va. 401, 47 S. E. 750, the court, dealing with the question of damages in condemnation proceedings, said: "It is proper to consider the uses of the land for all purposes, and particularly the uses to which the owner has applied it, and also all the facts and circumstances likely to enter into the value of the land."

Among the authorities cited was that of *Boom Co.* v. *Patterson,* 98 U. S. 403, 25 L. Ed. 206. The Mississippi and Rum River Boom Company owned three islands in the Mississippi River, fitting them to form, in connection with the west bank of the river, a boom of immense dimensions, capable of holding in safety over twenty millions of feet of logs, which added largely to the value of the lands; and the court said: "Their adaptability for boom purposes was a circumstance, therefore, which the owner had the right to insist upon as an element in estimating the value of his lands."

And in *Monongahela Nav. Co.* v. *United States,* 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463, it was held that the compensation for private property taken for public use must be a full and perfect equivalent for the property taken. Mr. Justice Brewer said in his opinion in that case that demand for the use is a factor in ascertaining value. "For each separate use of one's property by others the owner is entitled to a reasonable compensation, and the number and amount of such uses determines the productiveness and the earnings of the property and, therefore, largely its value."

In the case from.100 Va., *supra,* the court reached the conclusion that "it would be difficult, and perhaps impossible, to enumerate all the elements that go to constitute the value of property. There are no absolute measures or standards, and the methods to which, in such cases, courts are obliged to resort, can at least only approximate accuracy. The best that can be done is to appoint capable and upright commissioners to go upon the land, examine it, hear testimony, and consider all the facts and circumstances surrounding the situation, and likely to enter into the value of the subject, and thus ascertain what is the value of the land to be taken and the effect of such taking upon the residue of the tract. In doing this it is necessary to consider the uses of the tract in question for all purposes, * * * "

In *Hunter* v. *C. & O. Ry. Co.,* 107 Va. 158, 59 S. E. 415, 17 L. R. A. (N. S.) 124, it is said that "Where the whole property is taken in condemnation proceedings under constitutional and statutory provisions declaring that private property shall not be taken for a public use without just compensation, the 'just compensation' contemplated is the market value of the property in view of any purpose to which it is adapted. The full and perfect equivalent for the property taken is what the law contemplates as the market value thereof."

If property was for sale which could be put to no useful purpose, and which nobody wanted, it would have no market value. The extent, the variety and importance of the uses to which the property may be put, and the number of persons who desire it in order to meet their convenience or their necessities, is what gives the property its value. It would have been proper for the court to have told the commissioners that in ascertaining the value of the property sought to be condemned, they should consider the uses of the land for all purposes, which would have included the use for which it was sought by the defendant in error. It

might have stated to the commissioners that it was proper to consider the uses of the land for all purposes, and to have stated to them that among the uses proper to be considered was that for which the defendant in error desired its condemnation. The instruction under consideration does not take either of those forms. Counsel for the plaintiff in error saw fit to inform the commissioners in negative rather than in positive terms as to their duties.

As the whole of the property was in this case taken, no question arises as to consequential damages, and the sole duty of the court was to ascertain what would be just compensation to the owner—that is to say, what is the market value of the propery in view of any purpose to which it was adapted. The full and perfect equivalent for the property taken is what the law contemplates as the market value thereof. *Hunter* v. *C. & O. Ry. Co., supra.*

Its availability for the uses of the Normal School was one of the elements proper to be considered by the commissioners along with all the other uses to which it was adapted, but the object was not to ascertain the value to the school for its purposes, but to ascertain the fair market value of the property, so that just compensation might be made and a full and perfect equivalent given for the property taken. In the instruction offered and refused the attention of the jury is unduly directed to the necessities of the condemnor, the Normal School, and the commissioners, under that instruction, in ascertaining the perfect equivalent for the property taken by finding its market value for all the purposes to which it might be adapted, with their attention directed to and fixed upon the necessities of the Normal School, might well have been disposed to regard that as the chief element for their consideration.

Upon the whole case we are of opinion that there was no error in the judgment of the circuit court, which is affirmed.

*Affirmed.*