## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

SCHOOL BOARD OF THE CITY OF HARRISONBURG V. ALEXANDER

November 20, 1919.

1. · APPEAL AND ERROR—*Computation of Time—Presentation of Petition for Appeal.*—In the instant case the judgment complained of was awarded February 14, 1918. The petition for the writ of error was presented February 14, 1919. The petition and record, with the indorsement of the judge awarding the writ, were· delivered to the clerk of the Supreme Court of Appeals, and the writ issued thereon February 18, 1919. A motion was made to dismiss the writ under section 3455 of the Code of 1904 on the ground that more than one year had elapsed before the petition for the writ of error was presented, and under section 3474 on the ground that when the record and petition were delivered to the clerk of the Supreme Court of Appeals one year had elapsed "since the time of such final judgment." The case stood, under section 3474, as if the process had been issued on February 14, 1919. Therefore whether the year had expired under either statute depended upon whether or not February 14, 1918, was to be counted as a part of the year.

   *Held:* Under section 5 of the Code of 1904, as amended by Acts 1916, ch. 290, p. 508; February 14, 1918, was not to be counted as a part of the year and the one year did not elapse until after February 14, 1919.

2. TIME—*Computation of—Code of 1904, Section 5—Acts 1916, Ch. 290, p. 508—Code of 1919, Section 5, Cl. 8.*—By Code of 1919, section 5, clause 8, it is provided that: "Where a statute requires a notice to be given, or any other act to be done, a certain time before any motion or proceeding, there must be that time exclusive of the day for such motion or proceeding, but the day on which such notice is given or such act is done, may be counted as part of the time." Thus, Acts 1916, ch. 290, p. 508, amending Code of 1904, section 5, excluding the first day in computation of time, has been repealed and the provision of the Code of 1904, section 5, restored.

3. EMINENT DOMAIN—*Petition—Statement or Purpose of taking.*—
   The petition of a school board in condemnation proceedings
   declared "that it is necessary for the purposes of your pe-
   titioner that it acquire said lot."

   *Held:* That this was all that was required by clause 25 of sec-
   tion 1105f of the Code of 1904 under which the condemnation
   was sought. No greater particularity is required.

4. EMINENT DOMAIN—*Dwelling House.*—The building on property
   sought to be condemned by a school board was erected for
   a residence, and used and occupied as such until temporarily
   leased to the school board in part for kindergarten work, and
   in part as a residence for the school janitor. Pending this
   lease it was purchased by defendant for a residence, and she
   expected to occupy it as such as soon as she could get posses-
   sion thereof, which was to be within 60 days of her purchase.

   *Held:* That the building was a dwelling house within the mean-
   ing of the statute on eminent domain.

5. EMINENT DOMAIN—*Right of School Board to Condemn—Based
   on Statute.*—The right of a school board to condemn property
   for school purposes exists only by virtue of statute, and the
   board's right to condemn a dwelling, yard, or garden, can
   only be determined by a proper interpretation of the statutes
   on the subject.

6. EMINENT DOMAIN—*Power of State to Exercise and Delegate.*—
   The right to take private property for a public use is a very
   high prerogative right, but there is no doubt about the power
   of the State to exercise it, or to delegate it to subordinate
   agencies to be exercised in proper proceedings for the public
   good.

7. EMINENT DOMAIN—*Public Use—School Purposes.*—There can be
   no doubt that the use of property for school purposes is a
   public use.

8. EMINENT DOMAIN—*Strict Construction of Statute—Right to
   Take must be Plainly Conferred.*—The taking of private
   property is a matter of serious import, and is not to be per-
   mitted except where the right is plainly conferred and the
   manner of its exercise has been strictly followed. There must
   be no doubt or uncertainty about the existence of the power.
   If it is not plainly conferred, it does not exist.

9. EMINENT DOMAIN—*Delegation of Authority—Restrictions on Au-
   thority Delegated.*—The State may grant the power generally
   to condemn any property for a public use, or it may place
   such restrictions upon the power, the manner of its exercise,
   or the character of the property that may or may not be taken
   as it pleases, and when such restrictions are imposed they
   must be obeyed. If the limitations or restrictions imposed

involve public inconvenience, or retard the progress of public improvements, the remedy is an appeal to the legislature. They cannot be removed by judicial construction. The courts cannot enlarge a power which the legislature has restricted.

10. EMINENT DOMAIN—*Strict Construction of Statute.*—It is said that, in the construction of statutes conferring the power of eminent domain, every reasonable doubt is to be solved adversely to the right; that the affirmative must be shown, as silence is negation; and that unless both the spirit and letter of the statute clearly confer the power it cannot be exercised.

11. STATUTES—*Construction—General and Special Statutes—Statutes in Pari Materia.*—The power conferred by a general statute may and will be restrained by special enactments, and in cases of doubt, statutes in *pari materia* should be read and considered together.

12. EMINENT DOMAIN—*School Board—Power to Invade Dwelling, Yard, Garden or Orchard.*—Sections 1488 and 1538, as amended by Acts 1902-1904, pp. 798, 825, must be read in connection with clause 25 of section 1105f, Code of 1904. They were enacted by the same legislature, at the same session, and were parts of the legislative revision of the whole subjects dealt with, including the power of condemnation by "the trustees of any school district," whether of a city, town or county. When so read and considered, they constitute a restriction on the general powers conferred by clause 25 of section 1105f, and forbid the trustees of a city school, as well as the trustees of a school in a town or county, to invade a dwelling, yard, garden or orchard.

Error to a judgment of the Circuit Court of Rockingham county, on a petition by a school board to condemn land. Judgment for defendant. Petitioner assigns error.

*Affirmed.*

The opinion states the case.

*John Paul* and *D. O. Dechert,* for the plaintiff in error.

*George N. Conrad* and *George S. Harnsbarger,* for the defendant in error.

52

BURKS, J., delivered the opinion of the court.

The school board of the city of Harrisonburg applied to the Circuit Court of Rockingham county to condemn "for its purposes," a lot in the city of Harrisonburg belonging to Mollie A. P. Alexander, containing 1.74 acres. The owner demurred to the petition and also answered it, denying the right of the school board to condemn the property because it contained more than one acre, and also because the property was residence property, and it was proposed to condemn her residence and yard and garden. The circuit court sustained the demurrer and refused to appoint the commissioners, and to that judgment, this writ of error was awarded.

[1, 2] The judgment complained of was awarded February 14, 1918. The petition for the writ of error was presented February 14, 1919. The petition and record, with the endorsement of the judge awarding the writ, were delivered to the clerk of this court and the writ issued thereon February 18, 1919. A motion was made to dismiss the writ under section 3455 of the Code (1904) on the ground that more than one year had elapsed before the petition for the writ of error was presented, and under section 3474 on the ground that when the record and petition were delivered to the clerk of this court one year had elapsed "since the time of such final judgment." The last named statute provided that "the time which shall elapse from the presentation of the petition for an appeal, writ of error or supersedeas and the delivery of the record with the petition required by law to the clerk of the appellate court shall be excluded from the computation of said period of one year." The case stood, under this proviso, as if the process had been issued on February 14, 1919. Whether the year had expired under either statute depends upon whether or not February 14, 1918, is to be counted as a

part of the year. If it is not, then the year did not expire until the last moment of February 14, 1919. Under section 5 of the Code (1904) as it stood until the amendment of 1916, February 14, 1918, would have been counted and the motion would have to have been sustained, but by Acts 1916, chapter 290, page 508, it is declared: "Unless otherwise provided by the statute or contract under consideration, the time from or after which, or within which, an act may be done, or the time before or after a given date, shall be computed by excluding the first day and including the last day of the period." Thus computing the time the one year did not elapse until after February 14, 1919. The motion, therefore, will be over-ruled. Attention, however, is called to the fact that at the late revision of the Code the amendment of 1916 was disapproved, and the statute was restored to its former reading. Code 1919, section 5, clause 8.

[3] Objection was also made to the petition asking for the appointment of commissioners because it does not state "for what purpose" petitioner desired the condemnation. The petition declares "that it is necessary for the purposes of your petitioner that it acquire said lot." This is all that is required by clause 25 of section 1105f of the Code (1904) under which the condemnation was sought. Clause 4 of the same section, to which clause 25 is required to conform as far as practical, requires the petition to state certain facts "including the fact that the land * * * sought to be condemned is wanted for the uses and purposes of such" petitioner, but no greater particularity in this respect is required.

[4] The building on the property sought to be condemned was erected for a residence and had been used and occupied as such until recently when it had been temporarily leased for a year or more to the petitioner for kindergarten work in connection with the public schools of

the city, and in part as a residence for the janitor of said schools. Pending this lease it was purchased by the defendant, Mrs. Alexander, for a residence, and she expected to occupy it as such as soon as she could get possession thereof which was to be within sixty days of her purchase. We have no difficulty in holding that it was a dwelling house within the meaning of our statute on eminent domain.

[5-10]    The chief subject of enquiry in this proceeding is, can a city school board acquire by condemnation, for its purposes, a dwelling, yard or garden? As its right to condemn exists only by virtue of statute, the question can only be answered by a proper interpretation of the statutes on that subject. This is by no means free from difficulty. The right to take private property for a public use is a very high prerogative right, but there is no doubt about the power of the State to exercise it, or to delegate it to subordinate agencies to be exercised in proper proceedings for the public good; nor is there any doubt about the fact that the use for which the taking is sought in the case at bar is a public use. The taking of private property, however, is a matter of serious import and is not to be permitted except where the right is plainly conferred and the manner of its exercise has been strictly followed. There must be no doubt or uncertainty about the existence of the power. If it is not plainly conferred it does not exist. The State may grant the power generally to condemn any property for a public use, or it may place such restrictions upon the power, the manner of its exercise or the character of the property that it may or may not be taken as it pleases, and when such restrictions are imposed they must be obeyed. If the limitations or restrictions imposed involve public convenience, or retard the progress of public improvements, the remedy is an appeal to the legislature. They cannot be removed by judicial construction. The courts cannot enlarge a power which the legislature has

restricted. *Charlottesville* v. *Maury*, 96 Va. 383, 31 S. E. 520; *A. & F. R. Co.* v. *A. & W. R. Co.*, 75 Va. 780, 40 Am. Rep. 743. It is said that, in the construction of statutes conferring the power of eminent domain, every reasonable doubt is to be solved adversely to the right; that the affirmative must be shown, as silence is negation; and that unless both the spirit and letter of the statute clearly confer the power, it cannot be exercised. *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659, 666, 24 L. Ed. 1036; *Providence, etc., R. Co.* v. *Petitioner*, 17 R. I. 324, 21 Atl. 965, 972; *Ligare* v. *Chicago*, 139 Ill 46, 28 N. E. 934, 32 Am. St. Rep. 179.

[11] Chapter 46 B of the Code (1904) contains the general law of the State on eminent domain. Clause 25 of section 1105f of that chapter expressly confers upon "the trustees of any school district," whether in a city, town or county the right to have property condemned for their purposes. The same right is conferred by this clause on cities, towns and counties and upon State institutions. This chapter contains no restrictions upon the quality or quantity of land that may be taken. The power conferred is general, to take *any* land, building or etc., necessary for their purpose, and embraces dwellings, yards, gardens and any other land or buildings necessary for their purposes. If there are any restrictions upon the power thus conferred they must be found elsewhere. In *Burger* v. *State Female Normal School*, 114 Va. 491, 77 S. E. 489, the proceeding was had under clause 25 of section 1105f, above mentioned, and it was held that a dwelling could be condemned because the power conferred was general, to condemn any land or building, and no restriction had been placed thereon by that section or any other statute of the State. But it is well settled that powers conferred by a general statute may and will be restrained by special enactments, and that, in cases of doubt, statutes *in pari materia* should be read

and considered together. *South & W. R. Co.* v. *Commonwealth,* 104 Va. 314, 321, 51 S. E. 824, and cases cited. In the case last cited it is said "Another rule of construction is that where there are two statutes, the earlier special and the latter general—the terms of the general broad enough to include the matter provided for in the special—the fact that one is special and the other general creates a presumption that the special is to be considered as remaining an exception to the general, and that the general will not be considered as repealing the special, unless the provisions of the general are manifestly inconsistent with those of the special."

[12] It has been observed that the language of clause 25, section 1105f, "the trustees of any school district," applies as well to counties and towns as to cities, but section 1488, which is part of chapter 66 on "Public Free Schools for Counties," expressly provides that "no dwelling, yard, garden or orchard shall be invaded." It is clear, therefore, that the trustees of a school district in a county cannot make such invasion. The general power conferred by clause 25 of section 1105f is restrained by the provisions of section 1488. Coming now to the consideration of the powers of school trustees in cities, we find this subject chiefly dealt with in chapter 67 of the Code (1904), the title of which is "Of public free schools in cities, and in towns constituting separate school district." The first section of this chapter (1522) declares, amongst other things, that "The provisions of chapter sixty-six, except as provided in this chapter, shall be applicable to such cities and towns in like manner as to the counties of the Commonwealth." There are no exceptions in chapter 67 in any way affecting the matter here in controversy, so that the powers of condemnation and the restraints thereon would seem to be the same in the cities as in the counties. But, as if to put the matter beyond controversy, it is provided

by clause 15 of section 1538, chapter 67, that "City school boards shall in general have the same power in relation to the condemnation or purchase of land, and to the vesting of title thereto * * * as county and district school boards have in the counties." It was argued for the school board that this is a grant of power and not a restriction, but the board already had the power of condemnation under clause 25 of section 1105f, and, as well said by the learned trial judge, "when city boards are given the same powers as county and district boards have, they are of course not given greater powers than these boards have. They take the same powers with the same limitations. It is difficult to see how any greater powers can be claimed for cities under the provision." If the language used is a grant of power, not previously possessed, it carries with it its restrictions.

Prior to 1903, we had no general statute on the subject of eminent domain, but the power was exercised under separate statutes which regulated and defined the powers to be exercised by the different agencies upon which the power was conferred. For example, the powers of the University and of the Military Institute, respectively, are to be found in sections 1546 and 1585, respectively, of the Code of 1887 (Code 1904, pp. 826, 834). The powers of corporations are found in chapter 46 of the Code of 1887 under the title of "Corporations Generally." But the legislature of 1902-3-4 enacted a chapter (608) under the distinctive title of eminent domain (hereinbefore referred to as chapter 46B) the provisions of which are taken mainly from chapter 46 of the Code of 1887. It added, however, some new provisions, among them, clause 25 which reads as follows: "If the court, or the board of supervisors, of any county, the council of any city or town, the trustees of any school district, the institution for the deaf and blind, and of the State hospitals, the University of Vir-

ginia, the Virginia Military Institute, or any other institution of this State, cannot because of the incapacity of the owner, or inability to agree upon a price or terms, or because the owner cannot, with reasonable diligence, be found in this State, or is unknown, agree on terms of purchase with those entitled to any lands, buildings, structures, sand, earth, gravel, water or other material necessary to be taken and used for the purposes of such county, city or town, or school district, or for the purposes of the institution for the deaf and blind, or of any such State hospital, the University of Virginia, the Virginia Military Institute, or of any other State institution, it may acquire the same by condemnation under the provisions of this act, and the proceedings in all such cases shall be according to the provisions of this act so far as they can be applied to the same." This clause conferred new and enlarged powers on the agencies therein mentioned, and no limitations are imposed on these agencies by any provision of that chapter. But the same legislature, at the same session, amended and re-enacted chapters 66 and 67 of the Code of 1887, making many changes and alterations. Acts 1902-3-4 pages 798, 825. Prior to that time section 1488 expressly applied to trustees of city schools as well as of towns and counties in providing that "no parcel of land thus condemned shall exceed forty square poles in a city, eighty square poles in a town, or five acres in the country." By the amendment the language quoted was so changed as to read "no parcel of land thus condemned shall exceed one acre in a town or five acres in the country," but the further proviso that no dwelling, yard, garden or orchard should be invaded was left unchanged. The section, in other respects was left practically unchanged. But the changes made in section 1538 were many and radical. Among them was the insertion of clause 15 hereinbefore quoted relating to the condemnation of land for the use

of city schools.   There have been subsequent amendments of these sections, but they need not be referred to as they do not affect the question here at issue.   Sections 1488 and 1538 as then amended must be read in connection with clause 25 of section 1105f.   They were enacted by the same legislature, at the same session, and were parts of the legislative revision of the whole subjects dealt with, including the power of condemnation by "the trustees of any school district," whether of a city, town or county. When so read and considered, they constitute a restriction on the general powers conferred by clause 25 of section 1105f, and forbid the trustees of a city school, as well as the trustees of a school in a town or county, to invade a dwelling, yard, garden or orchard.

In *S. & W. Ry. Co.* v. *Commonwealth, supra,* it is said, "It is a settled rule of construction that all statutes in *pari materia* should be read and construed together as if they formed parts of  the same statute and were enacted at the same time, and where there is a discrepancy or disagreement between them such interpretation should be given as that all if possible may stand together.   *Dillard* v. *Thornton,* 29 Gratt. (70 Va.) 392, 396.   In that case it is said that the rule applies with peculiar force in the construction of a Code to the several parts thereof which relate to the same subject matter, were conceived by the same minds, prepared by the same hands, and adopted at the same time by the same legislative body.   *Easley* v. *Barksdale,* 75 Va. 281; *Bank* v. *Holland,* 99 Va. 495, 505, 39 S. E. 126, 86 Am. St. Rep. 898, 55 L. R. A. 155."

If the contention of the school board be correct that there are no restrictions on city school trustees, then there are none on trustees of schools for towns and counties, for clause 25 of section 1105f applies to all alike, and the effect would be a nullification of sections 1488, 1522 and 1538 which cannot be, but the latter sections must be held

to be a restriction upon the powers conferred by the former, or·an exception to the general grant. *Hawkins* v. *Bare,* 65 W. Va., 431, 60 S. E. 391.

It is insisted by counsel for the school. board that the amendment of clause 25 of section 1105f by the Acts of 1912, page 214, renders that clause inconsistent with section 1488 and repeals it by implication in so far as it relates to such restrictions, and he emphasizes the word "any" in the sentence describing the property which may be condemned as *"any* land, buildings, etc.," as though that word were not previously in the section, but the amendment made no such change. The Acts of 1902-3-4 describes the property which may be taken as "any land, building, etc.," and the only change made by the amendment of 1912 was to strike out the words "building, structures," and substitute in lieu thereof the words in parentheses In the following sentence taken from the amendment "any land (which land shall include any dwelling house, buildings, structures thereon) etc."

We are of opinion that the school board of the city of Harrisonburg has no right to have condemned for its purposes a dwelling, or yard, garden or orchard, regardless of the quantity of land to be taken, and for that reason the judgment of the circuit court of Rockingham county should be affirmed.

*Affirmed.*