PIONEER INVESTMENT CORPORATION,
Appellant (Defendant below),

and

Berger & Berger Construction Company, a corporation, Jerry Berger, F. W. Fitch Electric Company, Cook Paint & Varnish Company, Kinman Sheet Metal & Roofing Company, and Harold L. Jeffers, dba Commercial Paint Company (Defendants below),

v.

KASSLER & COMPANY, a corporation,
Appellee (Plaintiff below).

No. 3431.

Supreme Court of Wyoming.

Dec. 14, 1965.

Walter C. Urbigkit, Jr., of McClintock, Mai & Urbigkit, Cheyenne, for appellant.

James L. Applegate, of Hirst, Applegate & Thomas, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Kassler & Company, a corporation, hereinafter referred to as "Kassler," brought action seeking judgment against Berger & Berger Construction Company and Jerry Berger, hereinafter referred to as "Berger," in the sum of $49,004.23, plus interest, costs, and attorney's fee, due upon loans from Kassler to Berger; to have determined that claims of other-named defendants were inferior to Kassler; for the foreclosure of Kassler's mortgages upon properties Berger had given as security for re-

payment of Kassler's loans to Berger; for appointment of a receiver of the mortgaged properties including profits, rents, and income from them during the foreclosure period; and for a deficiency judgment against Berger.

Defendant Pioneer Investment Corporation, hereinafter referred to as "Pioneer," answered asserting Berger had assigned to it certain "loan closing proceeds" as payment to Pioneer for certain of Berger's land purchases; that the Berger assignments were delivered to Kassler; that Pioneer had not been paid the land purchase price; and that it was agreed Pioneer would make effort to sell the mortgaged properties and Kassler would not foreclose. Pioneer also counterclaimed alleging it had sold Berger certain lots, and in order to "protect" the sale price Berger executed an assignment of "closing proceeds," purportedly authorizing and directing Kassler & Company to "withhold from closing proceeds on permanent financing for land purchase costs, and to pay the same to Pioneer Investment Corporation, or at their direction," but that Kassler failed, neglected, or refused to pay the assigned proceeds to Pioneer, except for the sum of $400, to Pioneer's damage in the sum of $5,500; that another similar assignment from Berger to Pioneer which Kassler refused to pay amounted to $2,978.-39; and a still further similar assignment which Kassler refused to pay amounted to $3,750, Pioneer asking judgment against Kassler for the total of such assignments amounting to $12,228.39, and costs.

Trial being to the court without jury, Pioneer's counterclaim was denied and other matters not pertinent here were adjudged. Pioneer appeals from the denial of its counterclaim.

By stipulation it appears the Berger assignments relied upon by Pioneer were handed or mailed to the Cheyenne office of Kassler. The evidence reveals that Kassler financed the building of homes, and Berger and Pioneer promoted building developments; that Pioneer conveyed some lots to Berger, some of which Berger sold to individuals who mortgaged them to Kassler; and that Berger had also sold to one individual a lot which Berger had not received from Pioneer, and this lot was also mortgaged to Kassler who had previously foreclosed the same. However, there was no evidence that Kassler was indebted to either Berger or Pioneer at the time it received the assignments or that Kassler had accepted Berger's assignments or agreed either directly or indirectly to pay Pioneer any sum whatsoever. On the other hand, there was testimony that at the times the assignments were received at Kassler's Cheyenne office, Berger was indebted to Kassler in sums considerably in excess of the combined value of the assignments. There was no proof of any contract between Berger and Kassler which obligated Kassler to pay Berger any money whatsoever.

Appellant suggests Pioneer made a prima facie case of Kassler's acceptance of the assignments by there having been made a course of payments based upon or pursuant to the assignments. However, the evidence respecting those payments clearly shows they came from Berger and not from Kassler. If anything is shown by those payments it is that neither Berger nor Pioneer relied upon the assignments to satisfy Berger's indebtedness to Pioneer.

The discussion and authorities cited by appellant as to the right of assignment, the need for assent, and the bearing of non-acceptance are entirely irrelevant to the crucial questions determinative of Kassler's liability.

■ If Kassler was not indebted to Berger, the assignment of the nonexistent debt was a futile gesture. Not only was there a complete failure to prove any indebtedness of Kassler to Berger, but there was ample proof that it was Berger who owed Kassler.

6 Am.Jur.2d, Assignments, § 102, p. 282, points out:

"* * * the general rule is that an assignee of a non-negotiable chose in

action acquires no greater right than was possessed by his assignor, and simply stands in the shoes of the latter." (Citing a host of supporting authority.)

■ 6 C.J.S. Assignments § 82, pp. 1136–1137, also says:

"As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor. * * *"

And at 6 C.J.S. Assignments § 100, p. 1156:

"As a general rule, unless the assignment is invalid so that no rights against the debtor are transferred thereby, an assignee acquires all the rights possessed by the assignor against the debtor at the time of the assignment, and no more. * * *"

[3] At 6 C.J.S. Assignments § 113, ■ 1164:

"As the assignee acquires against the debtor only the rights which were possessed by the assignor (see supra § 100), the debtor may assert against the assignee any limitations or objections to which the claim assigned would have been subject in the hands of the assignor (see infra § 114)."

■ Finally, 80 C.J.S. Set-Off and Counterclaim § 54a, pp. 98–99:

"A cause of action which is assigned is generally subject to any right of recoupment, set-off, cross demand or counterclaim, as well as being generally subject to any right of compensation held by the obligor against the assignor before and at the time of the assignment or notice thereof, and this rule applies, although the assignor is bankrupt. In respect of such claims, the assignee ordinarily has no greater rights than the assignor, and the obligor is not by reason of the assignment put in a worse position than if the action were by the assignor. * * *"

In Levy v. Jacobs, 3 Misc.2d 994, 148 N.Y.S.2d 507, 508, the court said, "The plaintiff as assignee acquired no greater rights herein than his assignor, and in view of the fact that there was no debt due from the defendant to plaintiff's assignor, there was no debt due from defendant to plaintiff."

We find no error, and therefore the judgment of the district court is affirmed.

Affirmed.