## Richmond

### Winifred D. Looman

#### v.

### Rockingham National Bank, Executor of the Estate of Frank C. Dinges and Mildred C. Dinges, Shenandoah Telephone Company, Mary Mildred Murray, Nichole Dinges Murray, and Elizabeth Brown Looman

April 18, 1980.

Record No. 780946.

Present: All the Justices.

*William B. Allen, III; Thomas V. Monahan (Nikolas E. Parthemos; Hall, Monahan, Engle, Mahan & Mitchell; Allen and Allen,* on briefs), for appellant.

*George H. Roberts, Jr. (Donald E. Showalter; Phillip C. Stone; Wharton, Aldhizer & Weaver,* on brief), for appellees.

No brief or argument for Shenandoah Telephone Company, appellee.

HARRISON, J., delivered the opinion of the Court.

Winifred D. Looman endorsed and delivered to her father, Frank C. Dinges, 2,100 shares of the common stock of the Shenandoah Telephone Company, valued at $115,000. After the death of the father, this controversy arose between Mrs. Looman, who claimed the stock belonged to her, and the executors of the decedent, who contended the stock was a part of Dinges' estate. In a suit by Mrs. Looman to recover the stock the lower court found that the prima facie case created by plaintiff's endorsement and delivery of the stock certifi-

cates, and the rebuttable presumption of a valid transfer created thereby, had not been overcome by the evidence. It decreed that the stock was an asset of the father's estate.

Plaintiff admits that her endorsement and delivery of the stock certificates, standing alone, made a prima facie case in support of the transfer of the ownership of the stock. And she concedes that she had the burden of proof in the case. However, she contends that the important question is whether a transfer of ownership was intended, and she argues that the evidence clearly demonstrated an intent by her and her father that no gift or transfer of ownership to him would occur by reason of the transfer of the stock.

Frank C. Dinges and his wife died in a fire which occurred in their home in Shenandoah County on November 26, 1975. They were survived by Mrs. Looman, their only child. Dinges provided in his will that a portion of his estate be held in trust for his daughter until her forty-fifth birthday, at which time she would assume complete ownership of the trust property. The conditions which brought about the creation of the trust are reflected in the statement of facts stipulated by the parties.

Plaintiff's first marriage, which occurred on September 25, 1960, was terminated by divorce on June 25, 1969. Three days thereafter, on June 28, 1969, she married a Mr. Looman. Between November 29, 1961, and December 1, 1965, Dinges gave to his daughter, and had the Shenandoah Telephone Company issue to her, eight certificates of stock in varying amounts aggregating 200 shares. On October 23, 1970, the company declared a stock dividend and issued plaintiff a certificate for 500 shares. Another stock dividend followed on August 1, 1972, to plaintiff for 1,400 shares. Plaintiff said that all the shares of stock were "gifts from her father," who informed her of the gifts but took "possession of the certificates from the time of gift as he did other valuable papers of his daughter."

Plaintiff's second marriage was admittedly made over the "strong objection" of her father. Mr. Dinges lacked confidence in the business judgment of his son-in-law and expressed concern that creditors might obtain the property he had given his daughter. He therefore took steps to insulate her property from the creditors, even to the extent of having plaintiff deliver to him evidence of her ownership of her stock and other property over which the father never claimed ownership. Mrs. Looman said her father described his action as a "form of protection" and that she complied "simply because she was his daughter," but that she did not intend to surrender her ownership.

The stock in question, although issued to plaintiff and registered in

her name, had always remained in the physical possession of the father. Some time after plaintiff's second marriage, Mr. Dinges had his daughter endorse the stock certificates in blank. Plaintiff said that he offered no explanation of the reason for or the effect of his request. She said she complied with his request as she did all his requests pertaining to business matters. The stock was then taken by the father to the Farmers Bank of Edinburg, of which he was Chairman of the Board of Directors, and given to the bank's cashier for safekeeping. Several years later Dinges removed the certificates from the bank, but subsequently returned them, at which time the cashier noticed that plaintiff's signature on the certificates had been signed with a pencil. The cashier advised Dinges that the stock certificates should have been signed in ink. Dinges then took the certificates and later returned them to the cashier properly signed, and requested the cashier to witness plaintiff's signatures. This request was refused because plaintiff had not in fact signed before the cashier. At the same time Dinges, upon being told that the stock certificates should not be endorsed in blank, requested that his name be typed in as the transferee, and this was done. The certificates were then given to the cashier, who was requested to place them with other stocks of Dinges for safekeeping. Although Dinges had two lockboxes at the bank, the certificates were returned to the bank's vault, where they were found after Dinges' death.

The stock certificates involved in this case were never transferred on the books of the company from plaintiff to her father, and Mrs. Looman received all dividends, cash or stock, issued thereon. She also paid the income tax on the cash dividends she received.

Dinges was secretary of the Shenandoah Telephone Company and as such was required to make certain disclosures to the Federal Securities and Exchange Commission. In these disclosures the stock in question was shown as the stock of the plaintiff. In a statement reflecting the purchase by Dinges of telephone stock during the years 1970, 1971, and 1972, he showed his daughter as then owning 750 shares of the company's stock. On June 14, 1972, he acquired 50 shares of Shenandoah Telephone Company stock (not involved here) from plaintiff and filed the necessary form showing the transfer. However, it does appear that after he had the daughter endorse her shares, Dinges signed an SEC form showing his "indirect ownership" of the stock.

It was further stipulated that the notes or working papers used by the parties during the estate planning conferences between Dinges and his executor, and between Dinges and the attorney who prepared his

will, did not specifically show or list thereon the telephone stock which stood in the name of the plaintiff.

■ The facts are not in controversy, and it must be conceded that plaintiff's act of endorsing the certificates was an intentional act, knowingly and willingly done. The endorsement complied with the requirements of Code § 8.8-308[1], and delivery was effected as required by Code § 8.8-313.[2] The stock, which had always been in the possession of the father, continued in his possession after the plaintiff's endorsement. Since the evidence showing endorsement and delivery is uncontradicted, the only question that remains is whether the decedent became the owner of the stock as a purchaser within the purview of Code § 8.1-201(32). There, a purchase is said to include "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift *or any other voluntary transaction creating an interest in property*." (Italics supplied.)

Obviously the endorsement and delivery of the stock by the daughter to the father was not a sale or a gift. Whether it was some "other voluntary transaction creating an interest in property" depends upon a construction of the facts and circumstances surrounding the transfer of the certificates. The relationship of the parties is an important factor in determining their intent. Admittedly, Mr. Dinges had a deep affection for his daughter, and she in turn had complete confidence in him and felt safe in the knowledge that what he did, or requested her to do, was for her protection and in her best interest. The parties simply did not deal with each other across the bargaining table or at arm's length. The father wanted the daughter to have stock in the telephone company, and he purchased it for her and had the stock issued in her name. The result was that she received the dividends, but he retained possession of the stock and thereby could exercise a measure of control. The stock that he gave the daughter was undoubtedly a gift to her, and her ownership was such that had she so

---

[1] Code § 8.8-308 provides, in pertinent part, that:
(1) An indorsement of a security in registered form is made when an appropriate person signs on it or on a separate document an assignment or transfer of the security or a power to assign or transfer it or when the signature of such person is written without more upon the back of the security.
(2) An indorsement may be in blank or special. An indorsement in blank includes an indorsement to bearer. A special indorsement specifies the person to whom the security is to be transferred, or who has power to transfer it. A holder may convert a blank indorsement into a special indorsement.
[2] Code § 8.8-313 provides, in pertinent part, that:
(1) Delivery to a purchaser occurs when
(a) he or a person designated by him acquires possession of a security;...

desired she could have acquired physical possession of it at any time. However, there came a time when the father concluded that the mere possession by him of the stock did not afford his daughter the protection which she needed, whether from her creditors or those of her husband. It was then, with the complete acquiescence of the daughter, that he had the daughter endorse the stock to him in blank. Thereafter the father had his name inserted as the transferee of the stock, thereby doing the only thing needed to show his complete entitlement thereto, and his right to have the stock transferred to him on the books of the telephone company.

We find the conclusion inescapable that the position of the daughter throughout this entire transaction was that, since the stock had been given to her by her father and it had remained in his possession, he had a right to require that she reassign it to him. She did this under the assumption, and with the knowledge and the belief, that her father would do with the stock what he thought would be best for her protection.

Mrs. Looman, by her endorsement of the stock and by her course of action, placed her father in the position of exercising complete ownership of the stock. He could have sold it, passed title thereto to another, or had new certificates issued in his name. He did none of these things. Instead, he retained possession of the stock, properly endorsed and delivered to him, along with his other securities, and he executed a will which set up a trust for his daughter's benefit. This poses the obvious question: If Mr. Dinges had the legal and equitable ownership of the stock and the right to sell, give, and transfer it, or to do anything else with the stock that he wanted to do, why didn't he have the right to do nothing with it and simply let it become a part of his estate? By following this course of action the daughter continued to receive the dividends thereon, as he undoubtedly wished her to do, the stock was placed out of the reach of her husband's creditors and of hers, and ultimately the daughter would reap the benefit of ownership as a beneficiary under his will.

What occurred here is that a father, desiring to make a gift of intangible property to his daughter, followed one course of action for a time, and then, for reasons he considered valid, and without objection by the beneficiary of his largess, he decided to follow another course of action.

■ The fact that Mrs. Looman was permitted to collect the dividends on the stock was not inconsistent with the passage of either the legal or equitable title thereto to her father. *See Payne* v. *Tobacco Trading Corp.*, 179 Va. 156, 18 S.E.2d 281 (1942). Neither is it of

moment that the stock was never transferred from the daughter to the father on the books of the telephone company. In *Bank* v. *Holland,* 99 Va. 495, 39 S.E. 126 (1901), we held that it was not indispensable to the validity of the transfer of the stock in question that there should have been any endorsement on the certificate, or transfer on the books of the bank; and that the delivery of the certificate, without endorsement, by a husband to his wife, with intent to give her the stock, vested in the wife the complete equitable title and divested her husband of all present control and dominion over the same. We said:

> The only effect of the subsequent endorsement of the certificate and transfer of the stock on the books of the bank was to vest in the donee the legal title to that in which she already had the beneficial interest. This she could have compelled if it had not been done voluntarily.

*Id.* at 503, 39 S.E. at 129.

■ The issues in this case are admittedly factual. Appellant does not rely upon a parol trust. She says that "intent is at least equally as necessary a factor to a valid transfer [of stock] as is endorsement and delivery." The trial court found the evidence insufficient to overcome the prima facie case of transfer of ownership that arose by Mrs. Looman's endorsement and delivery of the stock, and insufficient to establish a lack of intent by the parties that a transfer occur. We cannot say that its finding is plainly wrong or without evidence to support it. On the contrary, the trial court's decision is presumptively correct and is reasonably supported by substantial, competent, and credible evidence. Accordingly, it will be

*Affirmed.*