William R. JONES, Appellant (Defendant),

v.

CENTRAL STATES INVESTMENT COMPANY, a foreign corporation, Appellee (Defendant),

and

Glyda May, (Plaintiff).

No. 5709.

Supreme Court of Wyoming.

Dec. 6, 1982.

Stanley K. Hathaway and Richard Barrett of Hathaway, Speight and Kunz, Cheyenne, for appellant.

Frank J. Jones, Wheatland, for appellee.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

This appeal involves a dispute among various litigants over several contracts, the subjects of which contracts are parcels of ranchland and 285 units of grazing shares in the Platte County Grazing Association.

The focus of our attention is on the question which asks whether the appellant Jones is contractually obligated to remit to the appellee, Central States Investment Company, some of the proceeds which came into his hands when the Platte County Grazing Association was dissolved. The trial judge found Mr. Jones liable to Central States Investment for the proceeds in question and it is from this decision that Jones appeals. He frames the issues for review in the following manner:

"I. IS JONES CONTRACTUALLY OBLIGATED TO CENTRAL STATES BEYOND THE CONTRACTUAL OBLIGATIONS OF MEEK?

"II. CENTRAL STATES WAIVED ANY RIGHTS TO SHARE IN THE PROCEEDS OF SALE OF THE GRAZING ASSOCIATION RANCHES.

"III. DOES EQUITY PROHIBIT THE RECOVERY BY CENTRAL STATES FROM JONES?"

We will affirm.

## FACTS

The plaintiff below, Glyda May,[1] along with her husband, Woodrow May, owned several parcels of ranchland in Platte and Albany counties as well as 285 shares of stock in the Platte County Grazing Association. After the death of her husband, Glyda May entered into a "CONTRACT FOR WARRANTY DEED" with Central States Investment on December 16, 1976. The agreement called for the transfer of real and personal property owned by the Mays, including the aforementioned 285 shares in the grazing association. With respect to the shares the contract provided:

"13. GRAZING SHARES: Sellers will use their best efforts to have the grazing shares described on Schedule C assigned and transferred to buyer or its nominee. However, it is recognized that such may not be possible, because of rules and regulations of the grazing association or its by-laws or otherwise, in which case sellers shall not be liable for same and the total sales price would be reduced by the sum of $20,000.00 allocated to such grzing [sic] shares, as shown on Schedule D. In such case, the $20,000 shall be deducted from the payment next owing on this contract and the total sales price reduced accordingly.

"One of the problems that may appear is the assignment and transfer of such grazing shares in the grazing association to a corporation or non-family size unit. If such transfer is impossible for that or any other reason, sellers may be able to take non-use of such shares and hold on to the shares for two years, and transfer in some way may be possible to please both buyer and sellers.

"If such grazing shares are transferred to buyer or its nominee, and they will be described on schedule C, buyer promises to pay to sellers ½ of any profit on the sale of such grazing shares if sold within the longer of: five years from the date of this contract, or the time when this contract and all notes and mortgages owing to sellers for this sale are paid."

The above clause sets forth the recognition of the parties that the buyer, Central States Investment, might not qualify for membership in the grazing association.[2] Even so, Mrs. May endorsed the certificates and delivered them to Central States Investment's attorney. The contract was finalized in all respects on April 21, 1977.

On that same 21st day of April, Central States Investment entered into an "AGREEMENT FOR EXCHANGE OF REAL ESTATE" with the Meeks. Through this contract, Central States Investment transferred portions of the real property purchased from May, together with the shares in the grazing association. The agreement also contemplated the rights of the parties relating to the shares in the following manner:

"6. TRANSFER OF GRAZING SHARES: Central States is the owner of two shares of stock in the Platte County Grazing Association and as part of the consideration for this Agreement does hereby agree to transfer and assign the same unto Meeks. The Platte County Grazing Association is the owner of two individual ranches located in Albany County, Wyoming. *In the event the Grazing Association shall convey either or both of these properties within five years from date of this Agreement and the proceeds received from any sale result in a distribution in excess of Twenty Thousand Dollars ($20,000.00) to Meeks, as holders of the shares transferred herein, Meeks agree to pay unto Central States a sum equal to one-half of any amount received which exceeds Twenty Thousand Dollars ($20,000.00), said payment to be*

---

1. The trial judge found that plaintiff May was not entitled to recovery from Jones, but that decision is not here for review since May did not appeal.

2. According to the bylaws of the association any transfer of stock upon the books of the association was subject to approval by the board of directors, and the transferee was required to qualify under the membership credentials provisions. The parties were obviously acting in recognition of those requirements found in the bylaws.

made within thirty (30) days after date of receipt of any proceeds." (Emphasis added.)

No mention of the bylaws limitations on stock transfer was made or incorporated in the agreement.

A problem arose when Platte County Grazing Association refused to effect a book transfer of the shares to Central States Investment or to the Meeks. As a result, May, Central States Investment and the Meeks became embroiled in a lawsuit seeking either enforcement or recission of the agreements according to their various interests and a trial was set for June 18, 1979.

On June 13, 1979 appellant Jones offered to purchase the land and the shares in question and to undertake various obligations of the parties to the contracts, pursuant to which offer the Meeks and Jones entered into a "CONTRACT FOR WARRANTY DEED." The parties not only agreed to transfer the real estate which was the subject of the Meeks-Central States contract, but also the shares in the grazing association. The contract also specified:

"The Purchasers acknowledge that they have had delivered to them copies of the following agreements:

"A. Agreement for Warranty Deed dated April 21, 1977, wherein Central States Investment Company is seller and Archie Meeks Transportation Company, Inc., is purchaser.

"B. Agreement for Exchange of Real Estate dated April 21, 1977, wherein Central States Investment Company is seller and Archie L. Meek and Maxine M. Meek, husband and wife, are purchasers.

"C. Contract for Warranty Deed dated December 16, 1976, wherein Glyda May, individually, and as Executrix of the Estate of Woodrow May, deceased, is the seller, and Central States Investment Company, a Tennessee corporation, is the purchaser.

"That the Purchasers acknowledge that they have received copies of the above instruments and have read the same and are acquainted with the terms and condi-

tions thereof and accept title subject to the terms and conditions of said agreements. The Purchasers promise and agree to perform in accordance with the terms and provisions of instruments 'A' and 'B' above-mentioned and to save the Sellers harmless thereunder.

"That as of this date, the Sellers are causing to be assigned to the Purchasers the above-mentioned Certificates of Stock in the Platte County Grazing Association. Upon their assignment to the Purchasers, the Purchasers agree to then execute stock powers re-assigning said certificates to the Sellers, and said certificates with stock powers affixed shall then be deposited with the escrow holder hereinafter named." (Emphasis added.)

In furtherance of the Meeks-Jones contract, May, Central States Investment and the Meeks asked the Platte County Grazing Association to transfer the 285 units of shares on its books to appellant Jones. This request was granted, whereupon the shares were transferred to Jones on the books of the association and he received possession of the stock certificates on July 2, 1979. The lawsuits filed by May, Central States Investment and the Meeks were dismissed.

The Platte County Grazing Association subsequently sold its interests in two ranches in Albany County, Wyoming, and, on December 31, 1980, a distribution of the proceeds of the sale to the stockholders began. Pursuant to the distribution, appellant Jones received varying sums of money according to his proportionate ownership of shares in the association. Jones then remitted to May one-half of the first distribution over and above $20,000. This was apparently a mistake on Jones' part because the formula for distribution of one-half of the proceeds over $20,000 was specifically provided for in the Meeks-Central States contract—but not in the May-Central States agreement. That agreement provided that May would receive one-half of the *profit* from the sale of the stock, but Central States did not sell the stock for a profit. About this time, the attorney for Central States Investment made a demand on Jones

for remittance of its share of the proceeds as specified in the contract it had entered into with the Meeks. Jones denied any obligation to Central States Investment.

The subject action was then commenced by Glyda May as plaintiff, with Jones and Central States as defendants, seeking a declaratory judgment with respect to the ownership of the proceeds received from the dissolution of Platte County Grazing Association.

The trial judge found that Jones had agreed to undertake all of the Meeks' obligations under their contract with Central States, and that Central States was therefore entitled to receive one-half of the proceeds of the distribution over and above $20,000. He also held that the failure of the grazing association to transfer the shares to Central States and the Meeks on the company records did not preclude the passage of the beneficial interests therein, and thus Jones had acquired his title in the stock from the Meeks and not from May as was his contention. The court also rejected Jones' assertion that since the Meeks had not received any of the monies on distribution their obligation to Central States was extinguished as was any obligation that he, Jones, may have assumed. The trial court concluded:

" * * * Had these parties not abandoned their lawsuit and pursued it to a successful conclusion, (successful from the standpoint of the plaintiffs Meeks and Glyda May), they would have had a judgment of a court requiring the grazing association to transfer the shares of stock on its books and records into the name of Meeks. In such case, the net result would have been exactly the same so far as defendant Jones is concerned, since he takes his title from Meeks and claims under an assignment which he alleges to be directly from the plaintiff Glyda May to defendant Jones—BUT defendant Jones would not have been in a position to have obtained the shares of stock in the grazing association directly from plaintiff Glyda May, had he not purchased the real property from Meeks. In

other words, he cannot pick out one portion of the transaction and claim that he dealt only with Glyda May in obtaining the shares of stock, although admitting that he purchased the land from the Meeks which had in turn been purchased by Meeks from Central States and prior to that by Central States from Glyda May. The entire transaction must be looked at as a whole."

We agree with these conclusions.

## DISCUSSION

Appellant's main contention is that the 285 shares in the grazing association were transferred to him directly from Mrs. May rather than through a chain of succession including Central States Investment and the Meeks. He says that neither Central States Investment nor the Meeks ever actually owned the shares, in which case the Meeks were not obligated by the provisions of their agreement with Central States to share in dissolution proceeds. Thus, the argument goes, if the Meeks could not be held liable to Central States Investment then neither could he, because there would then be no obligation to Central States Investment which he could assume. Appellant's waiver argument is bottomed in his belief that Central States Investment did not own the grazing shares and, upon dismissal of its previous lawsuit, it thereby waived any right to claim ownership in the shares in the present dispute. Given these positions, the sole issue for our resolution is whether or not, as a matter of law, the appellant derived his rights in the shares from Glyda May or from the Meeks. If he came by his rights through the transfer from the Meeks, then he is precluded from arguing that Central States Investment cannot share in the proceeds.

Jones admits that when entering into the contract with the Meeks, he agreed to assume all of the obligations of the Meeks that were incorporated in the Central States-Meeks agreement. The law is well settled that upon an assumption of obligations the assignee cannot defeat any rights or duties under a contract which

have been specifically agreed to. *Bornel, Inc. v. City Products Corporation,* Wyo., 432 P.2d 489 (1967). Also, the assignee stands in the shoes of the assignor and receives all of such right, title and interest as is possessed by the assignor and which the parties make the subject of the contract. *Pioneer Investment Corp. v. Kassler & Co., Wyo.,* 408 P.2d 803, 805 (1965). Here the Meeks-Jones contract specifically and unambiguously acknowledged that Jones had knowledge of the terms of the Meeks-Central States contract and provided that he was to "perform in accordance with the terms and provisions" thereof. One of the terms and provisions of the Meeks-Central States agreement required the Meeks to pay to Central States Investment "a sum equal to one-half of any amount received which exceeds Twenty Thousand Dollars ($20,-000.00)," from a sale of the grazing association's assets and a distribution of proceeds from the same.

■ Given the fact that appellant had specifically agreed to assume all of the Meeks' obligations, it follows that the contracts in question plainly and unambiguously set forth a duty on the part of Jones to remit to Central States one-half of all proceeds over $20,000 which he received in the distribution process. In such circumstances, parties to a contract must abide by plainly stated terms found therein, *Quin Blair Enterprises, Inc. v. Julien Construction Company,* Wyo., 597 P.2d 945 (1979), and we, as a reviewing court, must assume that the full intent of the parties is embodied in the plain language used. *Schacht v. First Wyoming Bank, N.A.-Rawlins,* Wyo., 620 P.2d 561 (1980). In other words, we need not resort to construction of the contracts at issue here, nor will we rewrite those agreements to reflect a different intent. *McCartney v. Malm,* Wyo., 627 P.2d 1014 (1981); *Laird v. Laird,* Wyo., 597 P.2d 463 (1979). From this it follows that appellant Jones can only defeat Central States Investment's right to share in the distribution proceeds if Central States Investment had no interests in the grazing shares which it could transfer to the Meeks.

■ We are of the opinion that appellant places too much reliance on the refusal of the Platte County Grazing Association to transfer the stock on its books. First of all the facts reflect that valid transfers of the shares occurred between May, Central States Investment and the Meeks under Wyoming's version of Article 8 of the Uniform Commercial Code. § 34–21–840(a), W.S.1977 provides:

"(a) Upon delivery of a security the purchaser acquires the rights in the security which his transferor had or had actual authority to convey * * *."

This section of the code requires delivery of a security, and when that is accomplished, the transferee is vested with all of his transferor's rights which the transferor had the authority to convey. 3 Anderson Uniform Commercial Code, § 8–301:4, p. 720 (1971). Delivery is described in § 34–21–852(a)(i), W.S.1977 as:

"(a) Delivery to a purchaser occurs when:

(i) He or a person designated by him acquires possession of a security; * *."

Here, Central States Investment's attorney acquired possession of the stock from Glyda May, and the fact that a valid delivery occurred is beyond dispute. The code also calls for an endorsement to validate a transfer. This provision is reflected in § 34–21–847(a) and (b) which reads in pertinent part:

"(a) An indorsement of a security in registered form is made when an appropriate person signs on it or on a separate document an assignment or transfer of the security or a power to assign or transfer it or when the signature of such person is written without more upon the back of the security.

"(b) An indorsement may be in blank or special. An indorsement in blank includes an indorsement to bearer. A special indorsement specifies the person to whom the security is to be transferred, or who has power to transfer it. A holder may convert a blank indorsement into a special indorsement."

The record reflects that May endorsed the shares in blank prior to delivering them to Central States Investment's attorney. Clearly, an effective transfer took place and, by the contract, Central States Investment acquired all of the rights which Glyda May had authority to transfer. Central States Investment then transferred to the Meeks such right, title and interest in the shares as it had acquired from Glyda May. Not until after these transfers had taken place did Jones enter into the picture and formulate his agreement with the Meeks.

Notwithstanding the above, Mr. Jones argues that, since the bylaws of the grazing association provided that the board of directors were required to approve all stock transfers and since it did not approve the transfers from May to Central States and from Central States to the Meeks, the purported transferees did not, therefore, acquire any interest in the shares. With respect to this contention, appellant overlooks the fact that approval by the board and a subsequent transfer of ownership on the corporate books, is not determinative of the rights extant as between the transferees and transferors. As was said in *Schonwald v. Cassell*, Okl., 475 P.2d 612, 614 (1970):

"* * * Non-entry upon the corporate books does not affect or defeat any rights as between the transferor and transferee themselves."

It has also been held that, under most circumstances, a transfer on the books may vest legal title but is not necessarily determinative of such transfer as will have the effect of transferring equitable title or the beneficial ownership of the stock. *Looman v. Rockingham National Bank*, 220 Va. 954, 265 S.E.2d 711, 714–715 (1980). A book transfer speaks only to the issues of record ownership, and not of legal or equitable title and is not a condition precedent to a valid transfer as between the parties to the transaction. *In the Matter of the Succession of Dunham*, La., 408 So.2d 888 (1981); *Danaher v. C.N. Flagg and Company, Inc.*, 181 Conn. 101, 434 A.2d 944 (1980); *Hall v. American Friends Service Committee, Inc.*, 74 Wash.2d 467, 445 P.2d 616 (1968). *New England Merchants National Bank of Bos-*

*ton v. Old Colony Trust Co.*, 356 Mass. 612, 254 N.E.2d 891 (1970).

The above authorities convince us that even though Glyda May could not have compelled a transfer of stock upon the books of the association with the attendant right in Central States Investments to graze cattle on the land since board-of-director approval could not be obtained, she was nevertheless free to transfer the beneficial ownership of the shares. This is exactly what the parties contracted for and therefore, when Jones purchased from the Meeks, he acquired their beneficial ownership in the 285 shares subject to the rights reserved therein by Central States Investment. It follows that although appellant later became the legal title holder of the shares from the grazing association's viewpoint, with the corollary right to receive liquidation proceeds, he could not defeat Central States Investment's rights previously reserved in the contracts with the Meeks.

We also reject appellant's waiver argument because it was likewise based on an assumption that Central States Investment had no enforceable interest in the stock. Similarly, we reject appellant's third issue because he failed to raise the same below, and the facts do not support his contentions.

Affirmed.