PETER J. MARESCA TRUST, BRUCE G. MURPHY, TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Maresca Trust v. Commissioner
Docket No. 11196-81.
United States Tax Court
T.C. Memo 1983-501; 1983 Tax Ct. Memo LEXIS 288; 46 T.C.M. (CCH) 1147; T.C.M. (RIA) 83501; August 18, 1983. *288 Held, Stocks and bonds in the residue of decedent's estate were sold by the executor prior to distribution so that capital gains are taxable to the estate rather than to petitioner as residuary trustee. Douglas E. Kahle and Thomas R. Frantz, for the petitioner. Scott Anderson, for the respondent. WHITAKER
MEMORANDUM OPINION WHITAKER, Judge: Respondent determined a deficiency of $14,303.21 and an addition to the tax under section 6651(a) [1] of $715.16 in petitioner's Federal income tax for the taxable year ending December 21, 1977. The only issue presented in this case is whether petitioner or the Estate of Peter J. Maresca (the Estate) was the owner and seller of 17 blocks of stock sold in February and April of 1977. [2]
All the facts have been stipulated and are so found. *289 Petitioner is a testamentary trust (the Trust) established by the will of Peter J. Maresca, the decedent. It has been stipulated that petitioner's address was Virginia Beach, Virginia, when the petition in this case was filed. On December 5, 1974, decedent died testate. His will, which had been executed on January 14, 1974, contained several specific bequests of stock, money and other personal property to various individuals. The residue of the estate was bequeathed to the Trust, which was directed to distribute income annually to five organizations until January 1, 2000, on which date the Trust's assets are to be divided and distributed to the five organizations. Bruce G. Murphy was nominated in decedent's Last Will and Testament as both the trustee of the Trust and executor of the Estate. On December 13, 1974, Mr. Murphy qualified as executor, and on July 14, 1975, he filed a Federal Estate Tax Return (Form 706) on behalf of the Estate. The estate tax return was under audit by respondent from November 25, 1975, until September 21, 1976, at which time a closing letter was sent to Mr. Murphy. On January 3, 1977, Mr. Murphy was qualified as trustee of the Trust. On January *290 18, 1977, Mr. Murphy as executor filed with the Clerk of the Circuit Court of the City of Virginia Beach, a final accounting of the Estate. As required by Virginia probate law, [3] the accounting was mentioned in a list of fiduciaries, whose accounts were before the Commissioner of Accounts. The list was posted at the front door of the court-house on the first Monday in February 1977 and the accounting was not completed until 10 days or more thereafter.The accounting was approved by the Commissioner of Accounts on February 24, 1977, and confirmed by the Clerk of the Court and recorded on March 14, 1977. This accounting included the following entry: "Balance of estate to Bruce G. Murphy, Trustee, to be held, administered and disposed of as set forth in the last Will and Testament of Peter J. Maresca." It listed thereafter 21 specific blocks of securities, eight savings certificates, and cash in a checking account, and stated the values of each. The securities listed on the final accounting as constituting the residue were sold on February 2 or 3, 1977 (except for 10 shares of Dreyfus Corporation sold on April 18, 1977), [4] by Fahnestock & Co. as brokers *291 for the executor. These securities had been registered in the name of the decedent and had never been formally transferred on the issuer's books either to the Estate or the Trust. In endorsing these stock certificates, Mr. Murphy signed "Bruce G. Murphy, Executor of the Estate of Peter J. Maresca." All the proceeds from the sale of the securities were paid in the form of checks drawn to "Bruce G. Murphy, Executor of the Estate of Peter J. Maresca." [5]
On February 4, 1977, Mr. Murphy opened a checking account in the name of "Bruce G. Murphy, Trustee under the Will of Peter J. Maresca, Deceased," and the checks received *292 from the sales of securities were deposited in this checking account after being endorsed "Bruce G. Murphy, Executor of the Estate of Peter J. Maresca." On April 24, 1978, Mr. Murphy as trustee filed a U.S. Fiduciary Income Tax Return (Form 1041) for the 1977 calendar year. This return was filed late, since the due date for filing was April 15, 1978, and no extensions had been obtained. Among the items of income reported on this return was $60,606.48 of capital gain income from the sales of the securities in February and April of 1977. A schedule attached to the return listed the specific blocks of shares and the gain (or loss) attributable to the sale of each block. On the return a deduction in the amount of $73,793.09 was claimed for amounts permanently set aside for five charitable organizations. This plus other deductions reduced the Trust's taxable income to zero. On June 16, 1978, Mr. Murphy as trustee filed an accounting for the Trust for the period from January 3, 1977, through January 2, 1978, with the Commissioner of Accounts for the Circuit Court for the City of Virginia Beach, Virginia. The accounting was approved. It listed as Trust assets the 17 blocks of securities *293 that were sold in February and April 1977, and reported the gains from the sales of these securities as attributable to the Trust. No returns or accountings showing the Estate as having been the seller of the shares in question have been filed. On audit respondent determined that the Trust was liable for additional income tax because section 642(c) does not allow a trust established by a will executed after October 9, 1969, to deduct from income amounts permanently set aside for a charitable purpose. In its petition, petitioner has abandoned the claim that it was entitled to a section 642(c) deduction. Instead, petitioner claims that the Trust is not liable for additional tax because the Estate not the Trust was the seller of the securities in question. It claims that the Estate never distributed the securities to the Trust. Rather, according to petitioner, the Estate sold the securities and then distributed the sales proceeds to the Trust. Therefore, the question which we must resolve is whether the securities were sold by the Estate or by the Trust. Petitioner has stipulated that if these securities were sold by the Trust, respondent's statutory notice adjustments are correct. *294 Respondent has stipulated that if sale was by the Estate, the gain was not taxable to petitioner and the statutory notice adjustments are erroneous. The critical dates are February 2 and 3, 1977. [6]
Generally, if a residuary trust is created by a will, the determination for Federal tax purposes of when the trust begins and receives its corpus almost invariably depends upon a determination of when the administration of the estate from which the residue is obtained comes to an end. Chick v. Commissioner,7 T.C. 1414 (1946), affd. 166 F.2d 337 (1st Cir. 1948). [7] When the same person acts as executor and trustee, as in the present case, it may be difficult to determine the precise date when the administration of the estate comes to an end and the trust receives the residue. Guidance is provided by section 1.641(b)-3(a), Income Tax Regs., which states: The period of administration or settlement *295 is the period actually required by the administrator or executor to perform the ordinary duties of administration, such as the collection of assets and the payment of debts, taxes, legacies, and bequests, whether the period required is longer or shorter than the period specified under the applicable local law for the settlement of estates. For example, where an executor who is also named as trustee under a will fails to obtain his discharge as executor, the period of administration continues only until the duties of administration are complete and he actually assumes his duties as trustee, whether or not pursuant to a court order. * * * This regulation and its predecessors have been upheld as valid. Old Virginia Brick Company v. Commissioner,44 T.C. 724, 729 (1965), affd. 367 F.2d 276 (4th Cir. 1966); Caratan v. Commissioner,14 T.C. 934, 938 (1950). This regulation and the case law applying it indicate that the determination of when the process of administration of an estate terminates is a factual inquiry and that the estate will be seen as terminated for Federal income tax purposes and the residuary trust created if the *296 administrator has performed the ordinary duties involved in winding up the estate, such as the collection of assets and the payment of debts and legacies. Farrier v. Commissioner,15 T.C. 277, 282 (1950); Alston v. Commissioner,8 T.C. 525, 529-530 (1947). In making this determination, we must not give controlling weight to whether State law recognizes the estate as terminated because the determination of the existence of an estate or a trust under the Federal tax statutes is a question of Federal, not State law. Estate of Armstrong v. Commissioner,2 T.C. 731, 734 (1943). Thus, the Court has on several occasions found an estate to have been terminated and a residuary trust deemed to be created for Federal tax purposes even though the estate had never been formally closed and the assets distributed from the estate to the trust. E.g., Old Virginia Brick Company v. Commissioner,supra;Pierce Estates,Inc. v. Commissioner,3 T.C. 875, 888 (1944); Estate of Armstrong v. Commissioner,supra.However, we have reached this result only where we have determined that estate administration has been unduly prolonged, that is, where the executors have long prior to the time period involved fully *297 completed their duties of estate administration. Respondent does not argue that theory here and with good reason. The facts do not support such a contention. The record in this case shows that the administration of the Estate was in the process of completion but clearly was not completed prior to the sale of the securities on February 2 and 3, 1977. In January 1977, Mr. Murphy qualified as trustee. [8] The assets of the Estate had been collected and its debts and taxes paid by that time. On January 18, 1977, he started the final act of estate administration, the payment of legacies and bequests, by filing with the local court a final accounting for the Estate. Respondent argues that prior to this date Mr. Murphy had distributed all assets including distribution to himself as trustee of the securities that were sold in February and April 1977. This final accounting contains language which might be so interpreted but the record as a whole is to the contrary.Respondent also placed much emphasis on the facts that the income tax return *298 of the Trust for the year 1977 and the first accounting for the Trust submitted on June 16, 1978, both showed the Trust as having been the seller of the securities. There is no explanation of these facts but in any event such subsequent events cannot alter what actually occurred in the period January through April 1977. We note first that the accounting should not be interpreted in this case as reflecting the distribution of all of the estate assets. [9] For example, there is included in the residue set aside for the testamentary trust the sum of $1,045.97 in a "Checking Account." But the stipulation states that the Trust checking account was not opened until February 4, 1977, substantially after the accounting was filed. Thus, on the date of filing of the accounting, the cash must have been in the Estate's checking account. Of even greater significance, the securities in question were on the dates of sale still registered in the name of the decedent. At the time of delivery to the broker, they were endorsed by Mr. Murphy as executor. The checks representing the proceeds of the sales showed the executor as drawee and were endorsed by Mr. Murphy in that capacity and then deposited *299 in the Trust checking account.These facts are consistent with a sale by the executor, not a sale by the trustee. We find that the final accounting itself did not constitute and was not intended to reflect an actual distribution of the Estate assets. Respondent maintains that under applicable Virginia statutory and case law, registration in the name of the executor or trustee was unnecessary for the trustee to effect sale of the securities. Technically, this may be correct in that the securities could perhaps have been transferred by Mr. Murphy as executor to himself as trustee and then sold by him as trustee without the intervening steps of registration and reissuance in his name as executor and then as trustee, but in that circumstance we believe the law would require some evidence of action by the executor amounting to an act of distribution. The cases relied upon by respondent, Looman v. Rockingham National Bank,220 Va. 954, 265 S.E. 2d 711 (1980), and Wrenn v. Daniels,200 Va. 419, 106 S.E. 2d 126 (1958), *300 simply do not address that point. Both cases focus on intent. In each, it was held that a completed gift had not been made since the original owner had not relinquished dominion and control in a property sense. By contrast, that court found a completed gift based in part on the fact that physical possession of the stock certificates had been transferred. First National Bank of Richmond v. Holland,99 Va. 495, 39 S.E. 126 (1901). Where the executor and the trustee is the same person, we must look to objective facts to ascertain whether a distribution has occurred. Here, all of the facts pertinent to the time period point to sale by Mr. Murphy as executor, not as trustee. The rule in Virginia is that-- If an executor is also appointed as a trustee under a will, he cannot be considered as holding any part of the assets in his capacity as trustee until he has closed his accounts as executor with reference to [the particular assets] and has been charged with [the assets] as trustee. [Rixey's Ex'rs v. Commonwealth,125 Va. 337, 99 S.E. 573, 575 (Va. 1919).] Under probate practice the accounting cannot be completed until it has been posted and a period of at least 10 days has expired. *301 Lamb, Virginia Probate Practice, p. 212 (1957). Here, the posting occurred on the first Monday in February 1977. Ten days thereafter would of necessity be subsequent to February 3, 1977. There being no basis to conclude that the administration was unduly prolonged and hence deemed terminated for Federal tax purposes, we are guided by Virginia law and we hold accordingly that the securities were held by Mr. Murphy as executor until after their sale. This is the result required by section 1.641(b)-3(a), Income Tax Regs., since Mr. Murphy had not prior to February 3, 1977, performed an essential act of estate administration, the distribution of the residue. Decision will be entered for the petitioner.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. The parties have stipulated that no income tax return was filed by the Estate for the 1977 taxable year and that if the sales were held to have been made by the Estate, it would have had an income tax liability for 1977 of $2,873.67. However, the Estate's income tax liability, if any, is not before us.↩
3. Va. Code sec. 64.1-171↩ (1968).
4. The stipulation failed to include the dates in February when United Income Fund and Southland Racing Corporation securities were sold but respondent has on brief agreed that we can assume for purposes of this case that such sales were effected either on February 2 or 3, 1977. ↩
5. The stipulation recites simply that these checks were "paid to" the executor and endorsed by him before being deposited in the Trust checking account. We interpret the stipulation to mean that the executor was named as drawee and the checks were delivered to Mr. Murphy in his capacity as "executor."↩
6. As pointed out above, 10 shares of Dreyfus Corporation were sold on April 18, 1977, but the value of these shares was negligible. Respondent has conceded on brief that this sale should be treated in the same fashion as the balance of the sales. Therefore, we will ignore this difference in timing.↩
7. See also Neuman v. Commissioner,T.C. Memo. 1969-140↩.
8. This act reflects Virginia probate practice, including the requirements of stock transfer agents.See Lamb, Virginia Probate Practice, p. 327 (1957).↩
9. It is unfortunate that the parties neglected to include in the stipulation facts as to the extent, if any, that estate assets had been distributed prior to the filing of the accounting.↩